[No. B194403. Second Dist., Div. Six. Feb. 20, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
KORY TAYLOR, Defendant and Appellant.

**COUNSEL**

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERREN, J.**—In *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 [53 Cal.Rptr.3d 856, 150 P.3d 738] (*Ben C.*), our Supreme Court held that the judicial review procedures established in *Anders v. California* (1967) 386 U.S.

738 [18 L.Ed.2d 493, 87 S.Ct. 1396], and *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], do not apply to conservatorship proceedings under the Lanterman-Petris-Short Act (LPSA) (Welf. & Inst. Code, § 5000 et seq.). Here we conclude that appeals from civil commitments under the Mentally Disordered Offender Act (MDOA) (Pen. Code,[1] § 2962 et seq.) are also exempt from the *Anders/Wende* review requirements.

After a court trial, appellant Kory Taylor was ordered committed to the State Department of Mental Health for treatment as a mentally disordered offender (MDO). Appointed appellate counsel filed an opening brief raising no issues and requesting our independent review of the record pursuant to *Wende*. At our request, the parties filed supplemental briefing addressing whether the judicial review procedures established by *Anders* and *Wende* apply to MDOA proceedings. Because we answer that question in the negative, we shall dismiss the appeal.

## BACKGROUND

In 1994, Taylor was convicted of battery on a police officer (§ 243, former subd. (c), now subd. (c)(1)) and was sentenced to state prison. Prior to his release on parole, the Board of Parole Hearings (BPH) determined that he met the MDO criteria. On May 26, 2006, Taylor petitioned for a hearing challenging the BPH's finding pursuant to section 2966, subdivision (b).

Emily Rosten, Taylor's treating psychologist, testified that he suffered from schizoaffective disorder, bipolar type. As a result of that disorder, Taylor experienced "very significant" auditory hallucinations and was "severely depressed and self injurious." Since his commitment four months earlier, staff usually had to monitor him to ensure he did not harm himself or others in complying with the "commands" he was hearing. Taylor's commitment offense occurred when he went to the police station to complain about a jaywalking ticket and assaulted a police officer who was sitting at the front desk. Taylor was also convicted of two felonies committed during his incarceration, both of which involved assaults on police officers.

Dr. Rosten opined that Taylor's severe mental disorder was a cause or aggravating factor in his commission of these offenses, noting that his mental health problems began when he was 13 years old and that he had been hospitalized multiple times prior to his incarceration. The doctor further opined that Taylor's disorder was not in remission and could not be kept in remission without treatment and that he was "resistive to treatment, uncooperative, assaultive and threatening." She also concluded that Taylor represented a substantial danger of physical harm to others as a result of his severe

---

[1] All further undesignated statutory references are to the Penal Code.

mental disorder, as demonstrated by his violent behavior and his failure to acknowledge that he suffered from a mental illness.

Taylor testified on his own behalf. He denied suffering from a severe mental disorder, and challenged Dr. Rosten's characterization of the commitment offense. According to Taylor, his assault on the officer at the police station "wasn't really that serious" and the fights he engaged in during his incarceration were "inevitable." He also believed he did not present a danger to others if released because he planned to attend Alcoholics Anonymous and get a job. He also represented that he would not fight anymore if the judge told him not to.

## DISCUSSION

In *Anders,* the United States Supreme Court held that when appointed counsel in a criminal defendant's first appeal is unable to find any arguable issues for briefing, counsel should submit a brief referring to any matters in the record that might arguably support the appeal, provide the defendant a copy, and request permission to withdraw. (*Anders v. California, supra,* 386 U.S. at p. 744.) After the defendant is given the opportunity to raise any points he or she wants the appellate court to consider, the court independently reviews the proceedings to determine whether the appeal is "wholly frivolous." (*Ibid.*) In *Wende,* the California Supreme Court concluded that *Anders* required the Courts of Appeal "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. This obligation is triggered by the receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally." (*People v. Wende, supra,* 25 Cal.3d at pp. 441–442.) The court further recognized that "counsel may properly remain in the case so long as he has not described the appeal as frivolous and has informed the defendant that he may request the court to have counsel relieved if he so desires." (*Id.,* at p. 442, fn. omitted.)

In *Sade C.,* our Supreme Court held that *Anders* and *Wende* do not extend to an indigent parent's appeal of an order adversely affecting custody rights or parental status. (*In re Sade C.* (1996) 13 Cal.4th 952, 959 [55 Cal.Rptr.2d 771, 920 P.2d 716].) After concluding that those procedures apply only as a matter of right to criminal appeals, the court found no reason to extend those procedures to indigent parent appeals after conducting a three-part analysis of the private interests at stake, the state's interests, and the risk that the absence of the review procedures would result in erroneous resolution of the appeal. (*Id.,* at pp. 986–987, citing *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 101 S.Ct. 2153].) The private interests at stake in *Sade C.* were the interests of the parent and the child, a relationship

the court recognized is implicit in the concept of liberty protected by the due process clause of the Fourteenth Amendment. (*In re Sade C., supra*, at pp. 987–988.) The state's interests were identified as the *parens patriae* interest in preserving and promoting child welfare, the "interest in an accurate and just resolution of the parent's appeal," and a " 'fiscal and administrative interest in reducing the cost and burden of [the] proceedings.' [Citations.]" (*Id.*, at pp. 989–990.) In the third stage of the analysis, the court concluded that the risk that the absence of *Anders* review would lead to an erroneous determination of the parent's appeal was "negligible" because experience indicated that "appointed appellate counsel faithfully conduct themselves as active advocates in behalf of indigent parents." (*Id.*, at p. 990.)

After balancing all three elements, the court concluded "that the require-ment of fundamental fairness contained in the Fourteenth Amendment's due process clause does not compel imposition of *Anders*'s 'prophylactic' proce-dures. Procedures that are practically 'unproductive,' like those in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use. To be sure, these procedures may have 'symbolic' value of some kind. [Citation.] Such value, however, is too slight to compel their invocation." (*In re Sade C., supra*, 13 Cal.4th at pp. 990–991, fn. omitted.) The court recognized that indigent parents and criminal defendants are not similarly situated because the former are not subject to punishment and the latter enjoy a wide range of constitutional rights. (*Id.*, at pp. 991–992.) The court also declined to extend the *Anders* procedures to indigent parent appeals pursuant to its inherent power to declare rules of appellate procedure, reasoning that "[w]hatever the benefits in ensuring that appointed appellate counsel conduct themselves as active advocates—they appear to be relatively small—the costs are greater. These obviously include time and money and delay in finality. It is true that the state's interest in its financial resources is no stronger here than elsewhere. But its interest in expeditiousness is strong indeed." (*Id.*, at p. 993.)

More recently, in *Ben C.*, the court held that LPSA conservatorship proceedings are not subject to *Anders/Wende* review. In applying the first two parts of the *Sade C.* analysis, which address the private and public interests at stake, the court noted that the LPSA furthered both private and public interests in, among other things, " 'ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program. ([Welf. & Inst. Code,] § 5001.)' [Citation.] The Act also serves to protect the mentally ill from criminal victimization (§ 5001, subd. (g)) and from the

myriad forms of suffering endured by those unable to care for themselves." (*Ben C., supra*, 40 Cal.4th at p. 540.)

In analyzing the third factor, the court noted that the LPSA contains several procedural safeguards to protect against unjustified commitments. A person can be subjected to a one-year commitment only after "a carefully calibrated series of temporary detentions for evaluation and treatment." (*Ben C., supra*, 40 Cal.4th at p. 541.) The commitment begins with a 72-hour detention which may be extended for 14 days, and then for an additional 14, 30, or 180 days. (Welf. & Inst. Code, §§ 5150, 5250, 5260, 5270.15, 5300.) " '. . . After the initial 72-hour detention, the 14-day and 30-day commitments each require a certification hearing before an appointed hearing officer to determine probable cause for confinement unless the detainee has filed a petition for the writ of habeas corpus. ([Welf. & Inst. Code,] §§ 5256, 5256.1, 5262, 5270.15, 5275, 5276.) A 180-day commitment requires a superior court order. ([Welf. & Inst. Code,] § 5301.)' [Citation.]" (*Ben C., supra*, at p. 541.) The proposed conservatee is thereafter entitled to appointed counsel and a trial in which a unanimous jury must find beyond a reasonable doubt that he or she is gravely disabled. (*Ibid.*; Welf. & Inst. Code, §§ 5350, 5365.) The resulting conservatorship is for a period of one year, during which there are two opportunities to petition for rehearing. (*Ben C., supra*, at p. 541; Welf. & Inst. Code, § 5364.) On rehearing, the matter is heard by the court. The conservatee is again entitled to appointed counsel, and need only prove by a preponderance of the evidence that he or she is no longer gravely disabled. (*Ben C., supra*, at p. 541; Welf. & Inst. Code, §§ 5364, 5365.)

After the one-year conservatorship expires, it can be extended for an additional year only if the conservator submits the opinions of two physicians or licensed psychologists that the conservatee is still gravely disabled. (*Ben C., supra*, 40 Cal.4th at p. 542; Welf. & Inst. Code, § 5361.) At the hearing to reestablish the conservatorship, the conservatee enjoys all the rights afforded in the initial commitment proceeding. (*Ben C., supra*, at p. 542; Welf. & Inst. Code, §§ 5350, subd. (d), 5365.) The conservatee is also entitled to appointed counsel on appeal. (*Ben C., supra*, at p. 542.) The court recognized that all of these procedures "reflect an extension of many safeguards also afforded to criminal defendants, while taking into account the essential differences between the two systems. Ordinarily, once a criminal judgment and sentence are final, the trial court loses jurisdiction to correct error. [Citation.] The criminal defendant's only recourse then is to the courts of review. The LPS scheme is quite different because of the one-year limit on commitments and the ability of the conservatee to return twice to the trial court for reconsideration during that 12-month period. [¶] As a result, the trial court's ongoing supervision remains focused on a conservatee's current needs and condition, in a manner quite different from that followed in a criminal context. Allowing continuing trial court attention ensures much more direct and appropriate

intervention. . . . It provides the conservatee with a more immediate avenue for modification than that afforded by the more cumbersome appellate review. And it keeps the focus primarily on the conservatee's current needs and progress, rather than on a retrospective consideration of conditions that may no longer exist." (*Id.*, at pp. 542–543.) In light of this "panoply of safeguards," the court determined that *Anders/Wende* review is not required in LPSA proceedings. (40 Cal.4th at p. 543.)

■ The court's decisions in *Sade C.* and *Ben C.* compel us to conclude that the *Anders/Wende* review procedures do not apply to postconviction commitments under the MDOA. Such review is required only for "appointed appellate counsel's representation of an indigent *criminal* defendant in his first appeal as of right." (*In re Sade C., supra*, 13 Cal.4th at p. 978, italics added.) MDOA proceedings are expressly defined as civil in nature. (§ 2972, subd. (a).) Our Supreme Court has also identified the MDOA as "a civil commitment scheme," and we are bound by that characterization. (*In re Howard N.* (2005) 35 Cal.4th 117, 127 [24 Cal.Rptr.3d 866, 106 P.3d 305]; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see also *People v. Williams* (2003) 110 Cal.App.4th 1577, 1588–1590 [2 Cal.Rptr.3d 890]; *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1271 [123 Cal.Rptr.2d 535]; *People v. Montoya* (2001) 86 Cal.App.4th 825, 830 [103 Cal.Rptr.2d 579]; *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 834 [58 Cal.Rptr.2d 32].) The purpose of the MDOA is to provide treatment for those suffering from mental illness, not to punish them for their past crimes. (§ 2960; *People v. Renfro* (2004) 125 Cal.App.4th 223, 232 [22 Cal.Rptr.3d 680].)

In analyzing the private and public interests at stake, we conclude that the individual's obvious interest in remaining free from a civil commitment is no greater than his or her interest in obtaining treatment for a severe mental disorder in order to prevent the commission of other crimes leading to further imprisonment. The state also has a strong interest in protecting the public from MDO's who represent a substantial danger of harm. (§ 2960.)

■ In assessing the risk that the absence of *Anders/Wende* review would result in the erroneous resolution of MDOA appeals, we recognize there are numerous procedural protections against unwarranted commitments. In addition to the factors that must be established in order to sustain a commitment (§ 2962, subds. (c), (d)), a prisoner who is certified for MDO treatment as a condition of parole has the right to a hearing before the BPH. At any such hearing, the person or agency that certified the prisoner for treatment bears the burden of proof. The prisoner is also entitled to the appointment of two independent mental health professionals who are experienced in the diagnosis and treatment of mental disorders. (§§ 2966, subd. (a), 2978.) The prisoner

may thereafter petition for a hearing in the superior court in which he or she has the right to counsel, a jury trial, and a unanimous verdict by proof beyond a reasonable doubt. (§ 2966, subd. (b).) Not unlike LPSA commitments, the MDO's commitment period is for one year only, during which the Department of Mental Health can recommend discontinuing treatment if it is determined that the MDO's mental disorder is in remission and can be kept in remission without further treatment. (§ 2968.) If continued treatment is sought after the one-year commitment period has expired, the MDO is entitled to a new hearing with the same trial and appellate rights. (§ 2972.) "[T]he trial court's ongoing supervision" in this regard "provides the [MDO] with a more immediate avenue for modification than that afforded by the more cumbersome appellate review." (*Ben C., supra*, 40 Cal.4th at p. 543.)

MDO's are also entitled to the appointment of counsel on appeal. As the court recognized in *Ben C.*: "The Rules of Court also create safeguards to ensure active advocacy on appeal. A Court of Appeal must now evaluate an attorney's qualifications for appointment, divide its appointments list into at least two levels based on experience and qualifications, match an attorney with the demands of the case, and review and evaluate the performance of appointed counsel to determine whether they should remain on the list at the same level, be placed on a different level, or be deleted from the list. (Cal. Rules of Court, rule 8.300.)" (*Ben C., supra*, 40 Cal.4th at p. 542, fn. omitted.) In our experience, MDOA appeals are assigned to a relatively small pool of well-qualified attorneys who competently discharge their duties. Due process therefore does not require us to extend the *Anders/Wende* procedures to these appeals.

After Taylor's attorney filed a brief raising no issues, Taylor was served with a copy of the brief and informed of his right to file a supplemental brief identifying any issues he wanted us to consider. No such brief was filed.[2] Taylor asks us to exercise our discretion to retain the appeal (see *Ben C., supra*, 40 Cal.4th at p. 544, fn. 7), yet he offers no legitimate reason for us to do so. Under the circumstances, we shall dismiss the appeal on our own motion. (*Ben C., supra*, at p. 544.)

## CONCLUSION

A convicted defendant has the right to one appeal in which to raise "arguable issues." When counsel declares that no such issues exist, it is incumbent upon us to review the record to ensure that this is so. Our holding

---

[2] Although Taylor's attorney asserts that Taylor "might wish to file a supplemental brief," he has never attempted to do so. Moreover, Taylor's attorney offers no support for his assertion that Taylor would have filed a supplemental brief had he known that we would not independently review the record.

in no way compromises this rule. Taylor was afforded these rights on his underlying conviction. The ensuing decision to commit him as an MDO required both medical and legal review and a hearing before the BPH. After the BPH determined that the commitment for treatment was necessary, Taylor exercised his right to have the matter heard by the trial court. A new hearing must be held every year, which means that Taylor will likely have a second judicial hearing before the appeal from the first would be heard. The concerns addressed in *Sade C.* and *Ben C.* are thus similarly resolved here.

## DISPOSITION

The appeal is dismissed.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 21, 2008, S162026.