Filed 7/14/14  P. v. Greenshields CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEAN ALEN GREENSHIELDS,<br><br>    Defendant and Appellant. | 2d Crim. No. B243827<br>(Super. Ct. No. F198931)<br>(San Luis Obispo County) |

In 1993, a jury found Sean Alen Greenshields not guilty of attempted murder by reason of insanity.  (Pen. Code, § 1026.)[1]  Greenshields appeals an order extending his involuntary commitment beyond the maximum term of commitment. (§ 1026.5.)  He contends that his extended commitment is precluded by the doctrine of judicial estoppel because his 2007 conviction in another case necessarily establishes that his sanity has been restored.  We affirm the order extending his commitment.

In a companion petition for writ of habeas corpus (*In re Greenshields* (July 14, 2014, No. B252222) __ Cal.App.4th __), Greenshields contends that he has a right to refuse antipsychotic medication unless he is determined by a court to be (1) incompetent to refuse medical treatment, or (2) a danger to others within the meaning of Welfare and Institutions Code section 5300.  We issue the writ by separate order.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

Greenshields suffers from paranoid schizophrenia. In 1993, a jury found Greenshields not guilty of attempted murder by reason of insanity. (§ 1026.) The San Luis Obispo County Superior Court committed him to a state hospital for a term of 13 years, with a maximum commitment date of July 2, 2012.

Throughout his commitment, Greenshields was treated involuntarily with psychotropic medication. He denies having a mental illness and contends the medications are toxic.

Greenshields attacked a psychiatrist in 2005 while he was at Patton State Hospital. He was charged in San Bernardino County Superior Court with attempted murder of the psychiatrist, assault by means likely to produce great bodily injury, and battery resulting in great bodily injury (the San Bernardino case). He did not raise insanity as a defense to the San Bernardino charges, and it is unclear from the record whether the San Bernardino court was aware of his section 1026 status.

In 2007, the parties reached a plea agreement in the San Bernardino case. Greenshields pled guilty to attempted murder in exchange for dismissal of the remaining counts. The 2007 plea agreement does not mention Greenshields' sanity or the status of his section 1026 commitment. The parties agreed to a total term of "up to 10 years in state prison," with "time is to be served concurrent to any other time def. is obligated to serve." The San Bernardino County Superior Court accepted the plea and sentenced Greenshields to prison, remanding him "to the custody of the Sheriff to be delivered to California Department of Corrections at Chino." The record is not clear, but it appears Greenshields served two years in state prison and was returned to Patton State Hospital for mental health treatment in 2010.

In 2010, the San Luis Obispo County Superior Court granted a petition to extend Greenshields' commitment to 2012 pursuant to section 1026. In 2012, the district attorney for the county of San Luis Obispo filed a petition to extend Greenshields'

2

commitment beyond his maximum date of commitment pursuant to section 1026.5, subdivision (b).

Greenshields filed two petitions in the San Luis Obispo County Superior Court in 2012. In one, he asked the court to take judicial notice of restoration of his sanity, based on his contention that the 2007 prison sentence in the San Bernardino case established that he was no longer insane. In the other, he asked for an order enjoining the state hospital from involuntary treating him with psychotropic medications. In May 2012, the court denied Greenshields' petitions. It referred to them collectively as "his Petition for Writ of Habeas Corpus which includes a Petition for Judicial Notice of Restoration and Sanity and Petition for Immediate Injunctive Relief . . . ." In the court's six-page decision, it rejected Greenshields' argument that the 2007 conviction established his restored sanity.

After the trial court denied his petitions, Greenshields moved to dismiss the petition to extend his commitment on the grounds that the 2007 prison sentence established his restored sanity and that extended commitment violated the 2007 plea bargain. He argued that he accepted the 2007 plea bargain and the prison term in order to avoid involuntary medication at the state hospital. Greenshields argued that it is unlawful to send an insane person to prison; and when the state sent him to prison on the San Bernardino charges, it implicitly acknowledged his sanity. The San Luis Obispo County Superior Court denied his motion to dismiss. In his trial brief, Greenshields renewed his arguments.

At the trial on the petition to extend Greenshields' commitment, staff psychiatrist Joshua Deane testified that Greenshields is being involuntarily treated with Zyprexa, an antipsychotic, and Depakote, a mood stabilizer. He said Greenshields believes he does not have a mental illness, and believes psychiatrists practice toxicology, "basically poisoning people." Deane testified that before he could recommend Greenshields for release, Greenshields would need to "come to terms with the need to take medication, [and] become more compliant and cooperative with treatment," among

3

other things. Deane testified that Greenshields "continues to represent a substantial danger of physical harm to others by virtue of his mental illness." He described Greenshields' attack on the psychiatrist in 2005 at Patton State Hospital, and an attack on another psychiatrist in 2011 at Napa State Hospital. He also described threats of violence in 2012.

The trial court granted the petition to extend Greenshields' commitment, finding "by reason of a mental disease, defect, or disorder [Greenshields] represents a substantial danger of bodily harm to others and is therefore a person properly subject to" section 1026.5, subdivision (b)(1). After trial, Greenshields filed another petition for writ of habeas corpus in which he argued that the San Bernardino conviction established his restored sanity. The trial court denied the petition, reasoning that there was no legal determination of restored sanity in the San Bernardino case because Greenshields did not assert insanity as a defense.

DISCUSSION

Greenshields contends that the order extending his commitment violates his right to due process and the People are judicially estopped from asserting his insanity after obtaining his conviction in the San Bernardino case. He also contends the order violates the terms of the San Bernardino plea bargain. We disagree because Greenshields' sanity was not adjudicated in the San Bernardino case and his extended commitment is not inconsistent with the terms of the agreement that he serve 10 years in state prison concurrent with any other prison term.

Due process requires the government to prosecute fairly in a search for the truth and not to obtain a result on the basis of inconsistent positions. (See *In re Sakarias* (2005) 35 Cal.4th 140, 160; U.S. Const. Amends. V, XIV, Cal. Const. Art. 1, §§ 7, 15.) The doctrine of judicial estoppel protects the integrity of the judicial system by preventing a party from gaining an advantage when it takes inconsistent positions in judicial proceedings. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) Judicial estoppel applies if the same party has taken two positions in judicial or quasi-judicial

4

administrative proceedings; that party was successful in asserting the first position; the two positions are totally inconsistent; and the first position was not taken as a result of ignorance, fraud, or mistake. (*Id.* at pp. 986-987.)

The People did not take inconsistent positions concerning Greenshields' sanity. In the section 1026 proceedings, the People took the position that Greenshields was insane. In the San Bernardino case, the People took no position concerning Greenshields' sanity. The issue was not adjudicated. It is a defendant's burden to plead and prove insanity as a defense to criminal charges. (§§ 25, subd. (b); 1026, subd. (a).) Greenshields did not raise the issue.

The People did not, as Greenshields contends, implicitly recognize Greenshields' restored sanity when it charged him with attempted murder. It is true that a person who is not guilty by reason of insanity is not subject to punishment in state prison. (*People v. Chavez* (2008) 160 Cal.App.4th 882, 896 [a person convicted of crimes and found not guilty by reason of insanity on others is first committed to a state hospital for treatment and his prison sentence must be stayed until his sanity is restored].) But whether Greenshields was or was not insane when he attacked the psychiatrist in 2005 was not adjudicated in the San Bernardino case.

A state must abide by the terms of a plea agreement, and failure to do so may violate due process. (*People v. Renfro* (2004) 125 Cal.App.4th 223, 230.) An extended commitment does not violate the terms of the San Bernardino plea agreement. In the San Bernardino case, the parties agreed that Greenshields would serve 10 years in state prison "concurrent to any other time [Greenshields] is obligated to serve." Greenshields was not obligated to serve any other prison time. His mental health commitment is not a prison term. (*People v. Chavez*, *supra*, 160 Cal.App.4th at p. 896.) He cannot serve a prison sentence until his sanity is restored. (*Ibid.*)

Greenshields raises the issue of involuntary treatment with antipsychotic medication in this direct appeal and in his companion petition for a writ of habeas corpus.

5

We resolve that issue in the habeas case because it was neither considered nor decided in the order appealed from here.

DISPOSITION

The judgment (order extending commitment) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____


Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, David A. Wildman, Deputy Attorney General, for Plaintiff and Respondent.