Filed 4/16/21  P. v. Kapral CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>ROBERT MARK KAPRAL,<br><br>    Defendant and Appellant. | F079198<br><br>(Super. Ct. No. BF160559A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Ralph W. Wyatt, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Robert Mark Kapral was involved with various business entities in a joint venture to purchase and develop 80 acres of land.  His dealings with the business culminated in

charges for embezzlement (Pen. Code,[1] § 508) and grand theft (§ 487, subd. (a)).
Additional tax evasion charges followed (Rev. & Tax. Code, § 19706).

The alleged victims to the theft crimes were McFarland Partners LLC (McFarland) and VDC LLC (VDC). Kapral eventually settled his case via negotiated plea with the district attorney.[2] The agreement reached by the parties entailed a conviction to an amended tax evasion charge (Rev. & Tax. Code, § 19705, subd. (a)(1)), restitution to the state Franchise Tax Board, and the dismissal of the original charges.

Central to this appeal, the negotiated plea included an agreement for a future "restitution hearing/bench trial" to determine restitution on the dismissed charges. In addition, the plea form included a typical *Harvey*[3] waiver.[4] At the plea hearing, Kapral's counsel informed the court, "[T]he restitution hearing on those dismissed counts … will be basically a bench trial where [Kapral] will also be able to, on those dismissed counts, raise his defenses." The hearing then concluded "with a *Harvey* waiver for all purposes" by the district attorney.

The case thereafter devolved into contentious litigation over restitution between Kapral, the district attorney, and the attorney for victims McFarland and VDC. Kapral maintained he entered into an agreement for a bench trial to determine restitution. The

---

[1] Undesignated statutory references are to the Penal Code.

[2] The negotiated plea was entered into after a preliminary hearing at which Kapral was held to answer on all charges.

[3] *People v. Harvey* (1979) 25 Cal.3d 754. "A [typical] *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167.)

[4] The waiver in this case, signed by Kapral, reads: "I understand that although some charges will be dismissed as a result of my plea of guilty or no contest, I agree that the sentencing judge may nevertheless consider the facts underlying the dismissed counts/cases, including determining any additional restitution that I may have to pay, in deciding the sentence in my case."

victims' attorney argued restitution should be determined by applying standard restitution law.

Ultimately, the court ruled it would conduct a standard restitution hearing where Kapral could not present a comparative fault defense but could otherwise contest alleged damages. Kapral never moved to withdraw his plea and, after the restitution hearing concluded, was ordered to pay more than $1,000,000 in restitution.

Kapral now raises the following claims: 1) He was entitled to specific performance of his negotiated plea, i.e., a full bench trial without limitation; 2) The damages were not proven with adequate foundation; and 3) The court erroneously ruled comparative fault did not apply. We make the following findings and affirm the restitution order.

First, an agreement to determine restitution in contravention of standard restitution law is against public policy and void. Second, Kapral forfeited his right to withdraw his plea. Third, the restitution order was adequately supported. Fourth, the court properly determined comparative fault did not apply as a defense.

## I.  Kapral Was Not Entitled To A Bench Trial To Determine Restitution

Kapral argues the restitution "hearing [was] completely at odds with the plea bargain entered into and agreed to by all the parties, and requires reversal of the restitution order and remand to the trial court." He contends "[t]hat the agreement here deviates from a typical *Harvey* waiver does not render it invalid …."

The People argue Kapral "entered a *Harvey* waiver on the dismissed charges, so he lacked the right to dispute liability. Also, if he did not get his anticipated plea-bargain benefit, then he should have moved to withdraw his plea, but he failed to timely do so and thereby forfeited that remedy. And even if a bench trial had been bargained for, that was legally unauthorized, so specific performance is improper."

We agree with the People the bench trial bargain was unauthorized. Because Kapral failed to withdraw his plea, he forfeited any claim he did not receive the benefit of his bargain.

3.

**A. Additional Background**

The "restitution hearing/bench trial" issue first arose at the initial sentencing hearing. Present at this hearing was Kapral's counsel and a deputy district attorney. Notably, the district attorney at the sentencing hearing was not the same attorney who entered into the plea.

Kapral's counsel informed the court he had discussed setting a trial date with the victims' attorney. The court interjected, "Not really a bench trial, right?" Counsel responded, "Well, it is …." The district attorney agreed that was his understanding. Several months of litigation followed.

At the next hearing, the victims' attorney appeared and argued, "[T]he plea agreement says [Kapral] gets a hearing/bench trial. It doesn't say he gets guaranteed a bench trial." The court set another hearing to sort out "any ambiguity with what the agreement was …."

Many briefs were filed regarding the issues involved. Kapral argued "[t]he plea agreement … [was] clear" and "the rules of a bench trial would apply where" he "would be permitted to present his defense …." The victims' attorney replied "a trial on merits of the dismissed theft causes of action [was] in contravention of the *Harvey Waiver*" and inconsistent with "the Victims' Bill of Rights."

The same deputy district attorney from the sentencing hearing now also opposed Kapral's argument. The district attorney claimed Kapral could withdraw his plea but was otherwise bound by the *Harvey* waiver and thus did "not have the right to dispute guilt or liability" for restitution.

In a subsequent filing, Kapral explained his defense to restitution was essentially that of quantum meruit, i.e., he had earned the money in issue.[5]

---

[5] "Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' " (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458.)

In a "final" brief, he sought "to enforce [the] plea agreement as a contract with [the] Court and the State of California." He reiterated his request to "apply the doctrine of comparative negligence to reduce the award of victim restitution against a criminally negligent defendant when the court finds that the victim's contributory negligence was a substantial factor in causing the victim's injuries" and acknowledged his right to withdraw his plea due to "unanticipated" restitution.

The parties appeared in court a few days after the "final" brief was filed. At that time, Kapral's attorney mentioned the right to withdraw the plea "if the restitution perimeters [*sic*] were different than the" plea agreement. He then asked for a tentative ruling regarding the "restitution hearing/bench trial" issue because he did not "want to get in a situation where [they] signed up for something or [Kapral] signed up for something potentially he didn't think was the same thing." The court declined to issue a tentative ruling and announced it would issue a "written ruling …."

The court subsequently issued the written ruling explaining how restitution would proceed. The ruling first acknowledged the court was dealing with "Direct Victim Restitution pursuant to § 1202.4(f) and not the broader form of restitution as a condition of probation pursuant to §1203.1." It then stated Kapral agreed to a standard *Harvey* waiver and concluded, "[a]fter making a *Harvey* Waiver, a defendant cannot present evidence he or she was innocent of the charges dismissed on the terms of the plea bargain in order to avoid payment of restitution."[6] It also ruled the plea bargain "term 'restitution hearing/bench trial' " was "a misnomer stated in the alternative" and there was no right to trial on restitution.

Finally, the court found "neither [it] nor the parties have the authority to agree to conduct a bench trial in lieu of a restitution hearing." It explained specific performance

---

[6] The rule "a defendant cannot present evidence he or she was innocent of the charges dismissed on the terms of the plea bargain in order to avoid payment of restitution" expresses the holding of *People v. Weatherton* (2015) 238 Cal.App.4th 676.

was not possible because victim restitution is mandated by the California Constitution and there is "no discretion or authority to impose a negotiated sentence that provides for an award of less than full restitution." Because Kapral may have reasonably believed the restitution process would proceed differently, the ruling acknowledged his right to withdraw his plea.

**B. Analysis**

"This appeal concerns direct restitution, the right to which was created in 1982 when California voters passed Proposition 8, also known as the Victims' Bill of Rights. [Citation.] The initiative added article I, section 28, subdivision (b) to the Constitution [citation], which in its current form establishes specific, enumerated rights '[i]n order to preserve and protect a victim's rights to justice and due process.' (Cal. Const., art. I, § 28, subd. (b).) Among those rights is direct restitution, which is defined expansively: '(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.' (*Id.,* subd. (b)(13)(A), (B).) As these rights are not self-executing, the Legislature was directed to adopt implementing legislation. [Citation.] The array of laws subsequently passed was eventually consolidated into section 1202.4." (*People v. Brooks* (2018) 23 Cal.App.5th 932, 940.)

The "right to restitution is a constitutional one …." (*People v. Pierce* (2015) 234 Cal.App.4th 1334, 1337.) "Victim restitution may not be bargained away by the People. 'The Legislature left no discretion or authority with the trial court or the prosecution to bargain away the victim's constitutional and statutory right to restitution. As such, it cannot properly be the subject of plea negotiations.' " (*People v. Brown*

6.

(2007) 147 Cal.App.4th 1213, 1226; *People v. Gross* (2015) 238 Cal.App.4th 1313, 1318.)

"It is of course axiomatic that when a plea bargain is made the defendant is entitled to withdraw his plea if the negotiated bargain is incapable of actual fulfillment." (*People v. Morris* (1979) 97 Cal.App.3d 358, 362.) "It is not error for the trial court to sentence a defendant to a term in excess of the negotiated disposition if it first allows the defendant the opportunity to withdraw therefrom. Once the opportunity is extended, the defendant must timely move to withdraw the guilty plea. … The defendant may not gamble on the outcome of the hearing and then successfully complain after an adverse ruling." (*People v. Gordon* (1991) 229 Cal.App.3d 1523, 1527.)

Because victim restitution is a constitutional right, the trial court here properly determined neither it nor the parties could agree to contravene the restitution procedure codified by section 1202.4.[7] "Specific performance of the plea agreement would undermine the [restitution] law and, in so doing, undermine public policy …." (*People v. Renfro* (2004) 125 Cal.App.4th 223, 233.) Kapral's claim the trial court erred in holding a standard restitution hearing is rejected and his request for specific performance fails.[8]

The remedy available to Kapral in this circumstance was to withdraw his plea. He was well aware of that right. It was mentioned by his attorney and the opportunity was

---

[7] The fact the trial court based its ruling on more than the unenforceable nature of the plea agreement is of no concern. " ' "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

[8] Kapral points out that the prosecutor could have dismissed the charges without a *Harvey* waiver which would have undermined the victims' "right to restitution on the dismissed charges." That is true. In that situation, a defendant might well receive a windfall or temporary reprieve due to the prosecutor's inadvertence or negligence. But it does not follow a *specific bargain* for such an outcome is lawful.

7.

extended to him by the court, yet he never moved to withdraw his plea. "[T]he failure affirmatively to request a [withdrawal] of plea does waive the right to do so."[9] (*People v. Walker* (1991) 54 Cal.3d 1013, 1025.) Accordingly, we find Kapral waived his right to withdraw his plea and it is no longer an available remedy.

## II. Restitution Was Properly Founded

Kapral takes primary issue with the award of attorney fees and his inability to cross-examine the victims' attorney.[10] He argues "[t]he 'victim' never presented any evidence here" and, because the victims' attorney did not testify, the attorney "couldn't be cross-examined on the contents of his declaration, [and] the defense was left with no effective way to dispute the legitimacy of the damages claimed." "This is all the more important," he says, "when you consider that attorney fees and costs, and auditing expenses, made up nearly two thirds of the restitution award …." His complaints are without merit.

### A. Additional Background

In the months preceding the restitution hearing, the victims' attorney filed several briefs either summarizing or detailing the restitution request. The attorney first filed a "statement of damages" for each victim. These filings were accompanied by separate "truncated master exhibit list[s] …." Those filings were supplemented with "master

---

**9** This waiver rule *only* applies where the trial court complies with section 1192.5. That section requires the trial court to inform a defendant, prior to taking a no contest or guilty plea, that its approval of a negotiated plea is not mandated and should it later withdraw approval the defendant has the right to withdraw the plea. The waiver rule was complied with in this case because the admonition was given in the change of plea form signed by Kapral. (See *People v. Silva* (2016) 247 Cal.App.4th 578, 590, fn. 14 ["The section 1192.5 admonitions can be oral or they can be provided in a written plea form provided by the court in which defendant acknowledges his receipt and understanding of the admonitions."].)

**10** In Kapral's "final" brief, he argued restitution beyond the damages calculated by the local police department were "unanticipated …." Although not explicit, attorney fees comprised the majority of the unanticipated amount.

exhibit list[s] ….'' The "master" lists included separate declarations—one for each victim—by the attorney in support of damages and total nearly 500 combined pages of exhibits.

The restitution hearing itself lasted eight court days. Eight witnesses, including Kapral, testified during the hearing. The victims' attorney did not testify.[11] Oral argument was heard several weeks later. At the conclusion of argument, the court stated it did not "find the [attorney fees] numbers startling at all" but desired "more specification as to just what was done generally."

The victims' attorney subsequently filed additional declarations related to attorney fees. These declarations included detailed legal bills totaling more than 250 pages. Kapral filed a separate "reply and objection" to each declaration. In his replies he argued only a small portion of the attorney fees were related to the criminal case.

The court issued a written ruling on restitution. It found largely in favor of the victims and ordered restitution in the amounts claimed, minus a relatively small portion it concluded Kapral had disproved.

**B. Analysis**

"A trial court's determination of the amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion. [Citation.] No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil action. [Citation.] In determining the amount of restitution, all that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' [Citation.] The order must be affirmed

---

[11] The victims' attorney claimed attorney-client privilege but the court did not explicitly rule on the asserted privilege. Instead, the court exercised its discretion and permitted the attorney not to testify.

if there is a factual and rational basis for the amount." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.)

A "defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1); *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) " 'The burden is on the party seeking restitution to provide an adequate factual basis for the claim.' [Citation.] 'The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt.' " (*People v. Jessee* (2013) 222 Cal.App.4th 501, 506-507.) After making a prima facie showing of loss, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Id.* at p. 507.)

"A ' "hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution." ' [Citation.] 'Section 1202.4 does not, by its terms, require any particular kind of proof.' " (*People v. Kelly* (2020) 59 Cal.App.5th 1172, __, petn. for review pending, petn. filed Feb. 25, 2021 (*Kelly*).) "[T]he standard of evidence at a restitution hearing does not necessarily require a crime victim to produce detailed billing records, receipts, or business invoices. [Citations.] A victim's loss statement submitted to probation may be sufficient to support a prima facie showing of loss." (*Ibid.*) "An under oath statement from a person qualified to state facts about the economic loss the business experienced may also be sufficient for a prima facie showing of loss." (*Ibid.*)

Restitution may be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) It is properly awarded even where the victim does not initiate the request. (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 784-785 (*Selivanov*).)

" 'The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited …." (*Selivanov, supra,* 5 Cal.App.5th at p. 783.) A defendant is entitled to notice of the amount of loss claimed and an opportunity to

contest the claim. (*Ibid*.) A "defendant does not have a state or a federal constitutional right to cross-examine" witnesses at a restitution hearing. (*People v. Cain* (2000) 82 Cal.App.4th 81, 87 (*Cain*).) There is no requirement the victim testify. (*People v. Lehman* (2016) 247 Cal.App.4th 795, 803.) "A trial court violates [due process] if the hearing procedures are fundamentally unfair." (*Selivanov, supra,* at p. 783.)

The restitution proceedings here were fair and adequately proved loss. The award of attorney fees was based on declarations with detailed records. Even if it were not, it would still be proper because " 'an award of attorney fees may be based on counsel's declarations, without production of detailed time records.' [Citation.] Billing documentation is not required." (*Kelly, supra,* 59 Cal.App.5th at p. __.)

Because the detailed bills ultimately were disclosed, the inability to cross-examine the victims' attorney was largely nullified. These disclosures were crucial because "[n]ot all the information contained in billing invoices is 'categorically privileged.' " (*Kelly, supra,* 59 Cal.App.5th at p. __.)

In any event, "[w]here a billing is relevant for a court proceeding, counsel may 'separate those portions of a record subject to disclosure from privileged portions.' " (*Kelly, supra,* 59 Cal.App.5th at p. __.) Although Kapral had no right to cross-examine the victims' attorney (*Cain, supra,* 82 Cal.App.4th at p. 87), that does not mean he had no right to contest the alleged fees.

There was a fair opportunity to contest the attorney fees in this case. "For example, [Kapral] could have called an expert to show" the fees were unreasonable or that they were not "related only to the crime." (*Cain, supra,* 82 Cal.App.4th at p. 87.) Indeed, he attempted to show the fees were not related to the crime. The court, also cognizant of the reasonableness issue, opined the fees were not "startling at all."

Lastly, the fact the victims did not testify at the hearing is not concerning for many reasons. The victims here were business entities. There is no requirement a victim testify at a restitution hearing. Victim restitution is constitutionally mandated and is

11.

properly awarded on "*any … showing to the court.*" (§ 1202.4, subd. (f), emphasis added.)

In sum, we find Kapral was not denied a full and fair hearing on restitution and the restitution claims were substantiated. (Cf. *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 [restitution reward based on probation report without supporting evidence is improper].) The court held a lengthy hearing, considered numerous filings, reviewed hundreds of pages of exhibits, and issued a written ruling detailing its conclusions. The trial court's rational calculation of the restitution award is entitled to deference. Kapral's claim the award was unfounded is rejected.

## III. Court Did Not Abuse Discretion By Excluding Comparative Fault Principles

Finally, Kapral argues the court erred by failing to consider comparative fault. Specifically, he argues the court conflated amorphous criminal conduct with actual convictions. We disagree.

### A. Additional Background

Kapral sought to have the court apply comparative fault principles to reduce the restitution reward. After the parties briefed the issues, the court found, as part of the written ruling on the hearing's scope, "[c]omparative fault principles cannot apply if the defendant's conduct was intentional."

### B. Analysis

"[A] trial court has sufficient discretion to appropriately limit the evidence admitted at a victim restitution hearing to avoid an unduly prolonged and involved hearing." (*People v. Millard* (2009) 175 Cal.App.4th 7, 42.) "In considering whether to reduce the award on comparative fault principles, the trial court could look beyond the level of culpability minimally necessary for the convictions to assess the quality of defendant's actions under all the circumstances set forth in the record." (*People v. Brunette* (2011) 194 Cal.App.4th 268, 284.) "[C]omparative fault principles do not apply

12.

in cases involving intentional" acts.  (*People v. Petronella* (2013) 218 Cal.App.4th 945, 971.)

The trial court appropriately determined comparative negligence principles do not apply to intentional crimes.  The dismissed counts in this case all involved intentional theft.  The overall conduct in issue was concrete and clear.

The court's decision to disallow comparative fault was based on its conclusions a bench trial was unauthorized and Kapral had entered into a standard *Harvey* waiver.[12] That decision was reasoned, and not arbitrary or capricious. In light of the *Harvey* waiver to specific crimes, and the wide latitude afforded trial courts to manage restitution hearings, we discern no abuse of discretion in this case.[13]

### DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

DETJEN, Acting P.J.

DE SANTOS, J.

---

[12] As described above, if Kapral inadvertently agreed to or signed the *Harvey* waiver, or disagreed with the court's interpretation, his remedy was to withdraw his plea.

[13] We reiterate Kapral nonetheless testified in his own defense and the court found he "was not a credible witness and his 'offset contention' was legally and factually untenable."