[No. E049552. Fourth Dist., Div. Two. Aug. 19, 2010.]

VINCENT COLLINS BERMAN, Plaintiff and Respondent, v. MATTHEW CATE, as Secretary, etc., Defendant and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Julie A. Malone and Gregory J. Marcot, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Sarah A. Stockwell and Sarah A. Stockwell for Plaintiff and Respondent.

**OPINION**

**MILLER, J.**—After plaintiff and respondent Vincent Collins Berman[1] completed a term of incarceration imposed pursuant to his plea of guilty in the Orange County Superior Court, he was placed on parole. At some point in time, defendant and appellant, Matthew Cate, as Secretary of California's Department of Corrections and Rehabilitation (hereinafter the Department) increased the proposed term of petitioner's parole from three to five years.[2] Petitioner filed a petition for writ of mandate in the Riverside Superior Court seeking specific performance of an alleged term of his plea agreement mandating that his term of parole not exceed three years. The superior court granted the petition and issued a peremptory writ of mandate directing the Department "to release Petitioner from parole immediately in compliance with and enforcement of Petitioner's plea agreement . . . ."

■ The Department appeals, contending that the filing of a petition for writ of mandate in the Riverside Superior Court was the wrong procedural vehicle in the incorrect venue for resolution of the issue. As to the merits of the petition, the Department maintains that a three-year period of parole was neither a term of petitioner's plea agreement, nor could it lawfully have been one. Moreover, the Department argues that, at most, a reference to a three-year term of parole in petitioner's initialed and signed guilty plea was a

---

[1] Vincent Berman, as petitioner in the trial court, will be referred to as "petitioner" throughout this opinion.

[2] The record contains no documentation of when petitioner was released from prison or when the Department increased petitioner's proposed parole term. Thus, we have no way of definitively discerning whether the Department's determination to increase petitioner's parole term was made before or after his release from prison. However, petitioner's pleadings indicate the decision was made after his release.

misadvisement for which petitioner has failed to allege sufficient prejudice entitling him to relief. While we agree with the Department that a petition for writ of habeas corpus filed in the Orange County Superior Court would have been the superior method of obtaining resolution of the issue, we find no procedural bar to deciding the issue at this point. Nevertheless, we agree with the Department that a three-year term of parole was not a negotiated "term" of petitioner's plea agreement; that it could not lawfully have been a negotiated term of such an agreement; and that, at best, the statement on the guilty plea form, that petitioner's incarceration would be followed by a parole term of three years, was a misadvisement of the consequences of his plea for which petitioner has failed to allege sufficient prejudice entitling him to relief. We, therefore, reverse the judgment of the superior court.

## FACTUAL AND PROCEDURAL HISTORY

On October 11, 2002, petitioner signed and initialed a form entitled "Guilty Plea in the Superior Court." The document reflects that petitioner would be pleading guilty to two counts of lewd and lascivious behavior upon a child under the age of 14 years (counts 1 & 2—Pen. Code, § 288, subd. (a)).[3] The form indicated that the maximum term of incarceration that could be imposed for the offenses was 10 years. Additionally, the form reflected the court's indicated disposition of three years of imprisonment should petitioner plead guilty. Petitioner specifically initialed a box adjacent to a preprinted statement that, following the expiration of any term of imprisonment, he would be placed on "3 years parole plus 1 year maximum confinement on revocation."

On the same day, the court orally advised petitioner that he could receive up to 10 years of imprisonment on the charges. However, pursuant to the plea, the court conveyed an indicated disposition of three years of imprisonment with petitioner waiving his accumulation of acquired credits. The court then noted, "At some point in time, . . . when you are released from prison you will be placed on parole. Probably a three-year term as far as parole is concerned. [¶] There will be certain terms and conditions of parole that you have to comply with. If you fail to do that, you could return to prison on a parole violation for any amount of time up to one year." The court then recapitulated the terms of the agreement: "The court has made a promise to you, [petitioner], to give you the three years low term on one count upon the agreement that you waive your credits as we have discussed. Separate and apart from that promise by the court, has anyone else made any other promises to you to get you to plead guilty here today?" Petitioner replied, "No." Petitioner then entered an oral plea of guilty to both counts. The court sentenced petitioner to the low term of three years on count 1 with no credit

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

for time served and to a concurrent term of three years on count 2, stayed pending completion of his commitment on count 1, at which time sentence on count 2 would be permanently stayed. The minute order of the hearing provided that "[petitioner]'s written waiver of legal and constitutional rights on GUILTY plea received and ordered filed."

Attached to petitioner's pleadings below are several documents purportedly issued by the Department (the documents have no headings or signatures) delineating petitioner's proposed term of parole upon release. The first document is an internal memorandum issued by the Department on May 5, 2003, discussing a purported change in the law effective July 19, 2000, requiring that persons convicted of a number of enumerated offenses, including the offenses for which petitioner was convicted, serve a minimum period of five years on parole.[4]

The second document, apparently dated April 7, 2004, reflected petitioner's earliest release date as May 10, 2005, and his latest release date as October 21, 2005. It likewise indicated a three-year parole term upon release.

The third document, apparently dated March 25, 2005, indicated petitioner's earliest release date as May 2, 2005, and his latest release date as October 11, 2005. It also reflected that, upon release, petitioner's parole term would be three years.

The final document is not dated (or at least the copy included in the record appears to have the top cut off of the page where the date appeared in the prior two documents). It reflected petitioner's latest date of release as October 11, 2005, but indicated no minimum release date.[5] It indicated a five-year term of parole. Nowhere in petitioner's pleadings does he indicate or attach documentation establishing his actual date of release. In his petition, petitioner avers that he received a memorandum from the Department on September 25, 2008, indicating that his term of parole would be increased to five years; however, he did not include this document in the record below.[6]

---

[4] The document alleges this change was required by an amended version of section 3000, subdivision (b)(1), for offenses committed on or after July 19, 2000. Petitioner's offenses were committed on May 6, 2001. The actual change in the statute requires that defendants convicted of the enumerated offenses "shall be released on parole for a period *not exceeding* five years . . . ." (§ 3000, subd. (b)(1), italics added.)

[5] Presumably this is because, as insinuated in his pleadings, petitioner had already been released from custody on the date the document was prepared.

[6] In response to the Department's petition for writ of supersedeas, petitioner avers that notice of the extension of his parole term from three to five years was made "a mere six months from [his] being discharged from parole." Again, it is difficult for this court to reconcile the dates and timeframes discussed without knowing precisely when petitioner was released from custody. If it was on the earliest listed date of release in the documents provided,

Petitioner alleged he filed three levels of administrative appeals seeking to enforce his purported plea term of a maximum three-year period of parole.[7] Petitioner attached a declaration averring that the terms of his parole restricted him from living with his family and having any contact with his children. He declared that being forced to maintain a separate residence placed an enormous burden on him and his family. Further, he declared: "Part of the plea agreement was that I would have a parole period of three years. I counted on this term when I agreed to plead guilty."

The court found that the petition for writ of mandate was a proper method for challenging the extended parole term: "[T]he right to seek another writ does not provide a speedy and adequate legal remedy. As argued by petitioner, he does not seek to attack his conviction as by a habeas petition, but to abide by his plea and require the executive branch to do the same." The court further found that "[t]he transcript of the proceedings demonstrates that the parties agreed to a parole term of not more than three years. This is not an illegal sentence; the statute on which respondent relies permits, but does not require, a longer parole term. It is thus consistent with the statute for the parties to agree to a parole term of three years—such a term does not exceed five years."

## DISCUSSION

### A. *Procedure*

As it did below, the Department contends that relief by writ of mandate was not warranted because petitioner had an adequate alternative remedy, i.e., the filing of a petition for writ of habeas corpus in the Orange County Superior Court. Although we agree that the filing of a petition for writ of habeas corpus in the superior court in which petitioner entered his plea would have been a superior method of seeking relief, we find no procedural impediment to our resolution of the issue. Therefore, we shall address the merits of the issue below.

■ Habeas corpus is the process guaranteed by both the federal and California Constitutions to obtain prompt judicial release from illegal restraint. (U.S. Const., art. I, § 9, cl. 2; Cal. Const., art. I, § 11.) "Every person unlawfully imprisoned *or restrained of his liberty, under any pretense*

---

petitioner would now have completed even the extended five-year period of parole. If it is the latest, then he would have less than two months to complete. In all likelihood, defendant has now completed the five-year parole term.

[7] The documentation supporting the filing of these appeals consists of several letters submitted between January 5, 2009, and March 4, 2009, to the Department, and its responses declining petitioner's requests.

*whatever*, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment *or restraint*." (§ 1473, subd. (a), italics added.) A parolee remains constructively imprisoned since he is not free from legal restraint by the authorities; habeas corpus is the appropriate method for challenging the legality of that restraint. (*In re Harincar* (1946) 29 Cal.2d 403, 408 [176 P.2d 58]; *In re Marzec* (1945) 25 Cal.2d 794, 797 [154 P.2d 873].)

■ Both superior and appellate courts have statewide jurisdiction to entertain a petition for habeas corpus relief. (*Griggs v. Superior Court* (1976) 16 Cal.3d 341, 343–346 [128 Cal.Rptr. 223, 546 P.2d 727]; *In re Van Heflin* (1976) 58 Cal.App.3d 131, 135 [128 Cal.Rptr. 257].) However, "[i]f the challenge is to a particular judgment or sentence, . . . [¶] . . . an evidentiary hearing is necessary [or] another court . . . is better situated to conduct a hearing," the petition should be transferred to the court which rendered the judgment. (*Griggs*, at p. 347.)

Here, since the main point of contention is whether a term of petitioner's plea agreement barred the Department from imposing a term of parole greater than three years, it would appear that the Orange County Superior Court would be in a better position to make such a determination upon a petition for writ of habeas corpus than would the Riverside County Superior Court upon a petition for writ of mandate. This is because the Orange County Superior Court would have ready access to its own files on the matter and a clearer understanding of the meaning, consequences, and process involved in the execution of the "Guilty Plea in the Superior Court" form, the central document at issue in this case, and the taking of pleas by the court in general.

■ Nevertheless, we note that section 1473, subdivision (d) specifically provides that "[n]othing in this section shall be construed as limiting the grounds for which a writ of habeas corpus may be prosecuted *or as precluding the use of any other remedies*." (Italics added.) Moreover, contemporary decisions have dulled the once clearly delineated purposes of the several extraordinary writs such that they now have overlapping and alternating uses and effects; thus, upon a proper showing, courts will grant the appropriate relief regardless of form. (*People v. Esquibel* (1975) 44 Cal.App.3d 591 [118 Cal.Rptr. 748]; 8 Witkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, §§ 231, 232, 238 et seq., pp. 1138–1142, 1147 et seq.; 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Writs, § 2, pp. 519–521.) Indeed, courts have inherent power to treat a petition for writ of mandate as one for habeas corpus. (*Neal v. State of California* (1960) 55 Cal.2d 11, 16 [9 Cal.Rptr. 607, 357 P.2d 839]; *Downs v. State of California* (1962) 202 Cal.App.2d 609, 612 [20 Cal.Rptr. 922].) Thus, since we already have jurisdiction over the grant of the petition for writ of mandate

(*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 703 [199 Cal.Rptr. 690]), we see no legal impediment to proceeding to the merits.

### B.   *Terms of plea agreement*

Petitioner contends that a three-year period of parole following his release from incarceration was an integral term of his plea agreement such that he is entitled to specific performance, i.e., an order compelling the Department to release him upon completion of a three-year term of parole. The Department responds that the preprinted statement on the guilty plea form that a three-year period of parole would be imposed upon petitioner's completion of his term of incarceration was not a term of his negotiated plea agreement nor could it legally have been one. We agree with the Department.

The framework for analyzing petitioner's contention " 'requires consideration of two related but distinct legal principles.' " (*In re Moser* (1993) 6 Cal.4th 342, 350–351 [24 Cal.Rptr.2d 723, 862 P.2d 723] (*Moser*); see *People v. Walker* (1991) 54 Cal.3d 1013, 1019–1020 [1 Cal.Rptr.2d 902, 819 P.2d 861] (*Walker*).) One is "that the parties must adhere to the terms of a plea bargain." (*Moser*, at p. 351; see *Walker*, at p. 1020.) The other is whether a defendant has been properly admonished as to the direct consequences of his plea. (*Moser*, at pp. 351–353; *Walker*, at pp. 1022–1023.)

A defendant is entitled to relief for a violation of the terms of his plea agreement without a showing of prejudice. (*Moser, supra*, 6 Cal.4th at p. 354; *Walker, supra*, 54 Cal.3d at p. 1026; *People v. Avila* (1994) 24 Cal.App.4th 1455, 1461 [30 Cal.Rptr.2d 138] (*Avila*).) However, in order to be deemed a term of a plea agreement, the circumstances must show that the " ' "plea rest[ed] in [a] significant degree on a promise or agreement . . . so that it can be said to be part of the inducement or consideration . . . ." [Citation.]' " (*Walker*, at p. 1024; see *Moser*, at p. 355; *Avila*, at p. 1461.)

Here, "there is no evidence that a three-year maximum parole period was 'a subject of negotiation (or even discussion) during the plea-negotiation process, or that the [court] made any promises or inducements relevant to the challenged element. [Citation.]' " (*Avila, supra*, 24 Cal.App.4th at p. 1461.) Indeed, the provision of the plea agreement relied on by petitioner as evidence that a three-year maximum period of parole was an integral term of the plea was a preprinted statement on a standard guilty plea form requiring only that petitioner initial the adjacent box. It was not a negotiated term

because it required no alteration whatsoever.[8] The minute order of the plea hearing reads: "[Petitioner]'s written waiver of legal and constitutional rights on GUILTY plea received and ordered filed." This, in itself, is strongly indicative of the fact that the statement regarding the parole term was an advisement of one of the consequences of the plea, not a term of the negotiated plea itself.

Moreover, at the oral taking of petitioner's plea the court advised petitioner that he would "probably" be placed on a three-year term of parole upon release from prison. The tentative nature of this statement could hardly be interpreted as a firm commitment that petitioner would in fact receive a definitive three-year term of parole upon release. The court then summarized the terms of the negotiated plea, stating only that petitioner would receive a three-year prison sentence in exchange for his guilty plea and waiver of accumulated credits. No mention of any promised term of parole upon release was made. When asked if petitioner had been promised anything else in exchange for his plea, petitioner replied in the negative. This, again, strongly reflects that the referenced parole term was merely an advisement of the consequences of his plea, not a term that induced or provided consideration for petitioner to enter his plea. As in *Avila,* "the court referred to parole in the course of advising defendant of the penal consequences of his plea. Nothing in these advisements reflects any prior negotiation regarding the parole period." (*Avila, supra,* 24 Cal.App.4th at p. 1461, fn. 4.) Furthermore, both the plea form and the court's oral advisement that petitioner faced a potential term of imprisonment of 10 years if he were convicted at trial, reflect that the true inducement for petitioner's guilty plea was the promised reduction of his exposure to a term of three years of incarceration. (*Walker, supra,* 54 Cal.3d at p. 1027 ["A person who pleads to a felony as part of a bargain generally does so to avoid prison, reduce the maximum term, or have other charges dismissed."].)

■ Finally, we note that numerous courts have determined that "the length of a parole term is not a permissible subject of plea negotiations." (*Moser, supra,* 6 Cal.4th at p. 357, italics omitted.) "[T]he court is authorized neither to determine whether a parole period shall be served nor to prescribe its duration; that is the province of the Board of Prison Terms." (*People v. McMillion* (1992) 2 Cal.App.4th 1363, 1369 [3 Cal.Rptr.2d 821] (*McMillion*); see also *People v. Renfro* (2004) 125 Cal.App.4th 223, 232 [22 Cal.Rptr.3d 680] (*Renfro*).) As "there is no legal mechanism for negotiating a plea agreement containing . . . reduced time on parole, the imposition of parole at sentencing simply cannot be regarded as a breach of such an agreement." (*McMillion,* at p. 1369.) Parole periods cannot be the subject of negotiations

---

[8] It is plain that the superior court failed to update the form to reflect changes in the law regarding parole terms that took effect on July 19, 2000.

nor a condition of a final negotiated plea. (*Avila, supra,* 24 Cal.App.4th at p. 1461.) Thus, even if by any stretch of the imagination the negotiated plea agreement could be deemed to have incorporated a three-year term of parole upon petitioner's release, the term would remain unenforceable.

At oral argument, petitioner maintained that *McMillion, Avila, Renfro* and *Moser* are all factually distinguishable from the present case, thus undermining our application of the principle established in those cases to the instant case, i.e., that parole terms are not the proper subject of negotiated plea agreements. We recognize that the factual predicate of this case differs from those in the aforementioned cases; nevertheless, we believe our distillation of the principle from those cases is properly applied to the facts of this case.

In *McMillion,* the People charged the defendant with burglary and petty theft with a prior conviction. The court gave an indicated disposition of probation or a low term of 16 months of imprisonment upon the defendant's plea of guilty. (*McMillion, supra,* 2 Cal.App.4th at p. 1366.) The court never informed the defendant he would be subject to a period of parole upon completion of any prison term. (*Id.* at p. 1367.) After the defendant entered his plea, the court permitted him to be released over the Christmas holidays, with the understanding that should he fail to appear for sentencing he would be sentenced to 16 months of imprisonment. The defendant failed to appear. The court sentenced him to 16 months' incarceration, " '[p]lus the applicable parole period.' " (*Id.* at p. 1366.) The defendant contended on appeal that a parole-free release from incarceration was an enforceable term of his plea agreement such that he was entitled to specific performance. (*Id.* at pp. 1366, 1368.)

The appellate court held that the trial court's failure to inform the defendant of the mandatory term of parole following his incarceration was a misadvisement rather than a specifically enforceable term of his plea. (*McMillion, supra,* 2 Cal.App.4th at p. 1369.) Hence, the defendant would be entitled only to the remedy of withdrawing his guilty plea upon a showing of prejudice. (*Id.* at p. 1370.) As relevant here, the court noted that "the [trial] court is authorized neither to determine whether a parole period shall be served *nor to prescribe its duration; that is the province of the Board of Prison Terms. Since there is no legal mechanism for negotiating a plea agreement containing no or reduced time on parole, the imposition of parole at sentencing simply cannot be regarded as a breach of such an agreement.* Instead, the trial court's error can only be viewed as a failure to advise appellant of the direct legal consequences of his guilty plea, which cannot be set aside unless the error was prejudicial to appellant. Accordingly, the remedy of specific enforcement by striking the parole period is unavailable to appellant." (*Id.* at p. 1369, italics added.)

In *Avila*, the defendant was charged with murder, an enhancement for personal use of a deadly weapon, and a prior serious felony conviction. The defendant pled guilty to second degree murder, admitted the use of a knife, and submitted a motion to strike the prior conviction allegation. The trial court advised the defendant he would receive a sentence of 15 years to life, plus one year for the knife enhancement; the court further informed him that upon completion of his prison term he would be on parole " 'for a period of up to three years.' " (*Avila, supra*, 24 Cal.App.4th at pp. 1457–1458.) Prior to sentencing, the defendant moved to withdraw his plea, noting that contrary to the trial court's statement he would be statutorily required to remain on parole for life. While the trial court found the defendant had been misadvised regarding the term of parole following his incarceration, it determined that the parole period was not a part of the plea bargain and denied his motion to withdraw the plea. (*Id.* at p. 1458.)

The appellate court held that while the trial court had misadvised the defendant, he had failed to allege sufficient prejudice to justify withdrawal of the plea. (*Avila, supra*, 24 Cal.App.4th at pp. 1459–1460.) Moreover, the appellate court held that a three-year maximum parole period was not a term of the plea agreement; there was no evidence a parole term was the subject of negotiation. Furthermore, because the term of parole "was a statutorily mandated consequence of defendant's conviction[,] it . . . could not have been the subject of negotiations or a condition of the final agreement." (*Id.* at p. 1461.)

In *Renfro*, the defendant was confined as a mentally disordered offender (MDO). He attacked hospital personnel, for which he was prosecuted. The defendant entered a plea bargain which included a guilty plea to one offense, but a declaration that the offense could not be used against him in a subsequent MDO commitment proceeding. (*Renfro, supra*, 125 Cal.App.4th at p. 227.) Prior to his release from prison, MDO proceedings were initiated; the court refused to enforce his plea agreement; the defendant was subsequently committed on the basis of the offense to which he pled guilty. (*Id.* at pp. 228–229.)

On appeal, the court held "that a plea bargain may not be conditioned on a judicial finding that the subject offense falls outside the MDO law." It ruled that a condition that an offense may not be used in commitment proceedings "is not a proper subject for a plea agreement and may not be enforced by specific performance." (*Renfro, supra*, 125 Cal.App.4th at p. 228.) "To permit such a plea agreement would, in effect, nullify a mandatory statutory parole scheme . . . . [¶] . . . [¶] The prosecution and criminal court . . . do not have unfettered discretion in determining the subject matter of a plea bargain. The court must exercise its sentencing authority in accordance with the Penal

Code, public policy, and decisional law. [Citation.] . . . A plea bargain is limited to 'powers legally available to' the court [citation] . . . ." (*Id.* at p. 230.) "Specific performance of the MDO provision of [the defendant]'s plea agreement would permit the sentencing court to determine prospectively that, at the time of his parole, [the defendant] would not pose a significant danger to society as the result of a severe mental disorder. In so doing, the sentencing court would eliminate the mandated role of the Board of Prison Terms and mental health professionals in an MDO proceeding, and would bargain away the independent judicial power of a court in another proceeding." (*Id.* at p. 232.)

In *Moser*, the petitioner was charged with first degree murder with an enhancement for personal use of a firearm, subjecting him to a total potential term of imprisonment of 27 years to life. The petitioner entered into a negotiated plea agreement whereby he would plead guilty to second degree murder and receive a prison sentence for 15 years to life. The trial court twice informed the petitioner that upon release he faced a maximum parole term of four years. (*Moser, supra,* 6 Cal.4th at pp. 346–348.) The actual prescribed period of parole for second degree murder was life. (*Id.* at p. 347, fn. 2.) Three years after entry of judgment, the petitioner filed a petition for writ of habeas corpus seeking leave to withdraw his plea without alleging prejudice. The People responded that the appropriate remedy was specific performance, i.e., an order imposing a maximum parole term of four years upon the petitioner's release. The People asserted that the Board of Prison Terms, "the statutory entity charged with administering the parole process, had assented to such a remedy." (*Id.* at p. 349.) The superior court issued an order setting aside the conviction and permitting the petitioner to withdraw the plea. The People appealed and the appellate court reversed. (*Id.* at pp. 349–350.) The California Supreme Court granted review to determine " '[w]hether a trial court's misadvice as to the applicable period of parole for a defendant pleading guilty constitutes a violation of the plea agreement or a violation of the court's duty to advise of the consequences of the plea, and, if the defendant is entitled to relief, what is the appropriate remedy.' " (*Id.* at p. 350, fn. omitted.)

The court determined that misadvisement of the mandatory parole consequences of a defendant's guilty plea is error entitling the defendant to withdraw the plea only where he or she establishes prejudice, i.e., that the defendant would not have pled guilty but for the misadvisement. (*Moser, supra,* 6 Cal.4th at p. 352.) Whether a misadvisement may be deemed a violation of the negotiated terms of a plea bargain depends on whether the plea rested in any significant degree on the term such " 'that it can be said to be part of the inducement or consideration.' " (*Id.* at p. 355, italics omitted.) The court found that nothing in the record indicated that the parole term was an element of the parties' negotiations such that it could be considered a

bargained-for term of the plea agreement. (*Id.* at pp. 355, 356.) The court further noted that "the length of a parole term is *not* a permissible subject of plea negotiations. The lifetime term of parole challenged in the present case is a statutorily mandated element of punishment imposed upon every defendant convicted of second degree murder. [Citation.] Neither the prosecution nor the sentencing court has the authority to alter the applicable term of parole established by the Legislature.[9] [Citations.] In the present case, if (as appears from the record) the subject of parole was not encompassed by the parties' plea negotiations, imposition of the statutorily mandated term of parole would not constitute a violation of the parties' plea agreement. [Citation.]" (*Id.* at p. 357, fn. omitted; see *id.* at fn. 12.)

Petitioner essentially argues here that the term of parole contained in his written plea agreement and discussed during entry of his plea was, unlike *Moser*, *McMillion* and *Avila*, not an illegal parole term. Indeed, a three-year term of parole is specifically within the legally established timeframe established by statute: defendants convicted of the specified offenses "shall be released on parole for a period *not exceeding* five years, unless in either case the parole authority for good cause waives parole and discharges the inmate from the custody of the department." (§ 3000, subd. (b)(1), italics added.) Moreover, petitioner insinuates that the statements in *Moser*, *McMillion* and *Avila* that the respective defendants' plea negotiations did not appear to incorporate the subject of parole, implies that the length of parole could legally be a term of a plea, where the record establishes that it was clearly a negotiated term. Although not without some logical appeal, we disagree with petitioner's conclusion that a parole term can be the subject of plea negotiations enforceable through the remedy of specific performance.

First, the petitioner in *Moser* never asserted that the parole term was a negotiated term of his plea agreement entitling him to specific performance. On the contrary, the petitioner in *Moser* asserted that the reference to a specific term of a parole was a misadvisement of the consequences of his plea entitling him to withdraw the plea. Thus, the *Moser* court did not squarely face a contention that a parole term was a negotiated term of a defendant's plea agreement.

■ Second, the statute explicitly delegates parole authority to the Board of Parole Hearings (the board). (§ 3000, subd. (b)(6) & (7).) The board has sole authority, within the confines set by the Legislature, to set the length of parole and the conditions thereof. (§§ 3000, subd. (b)(6), 3041.) While the commitment offense is one factor the board may consider in determining the

---

[9] "[I]n effect, the person must 'earn' the right to reduce the lifetime term of parole . . . . Thus, the applicable statute precludes setting the parole term . . . in advance of the person's release from prison." (*Moser, supra*, 6 Cal.4th at p. 357, fn. 12.)

length of parole, it must likewise consider a myriad of statutory factors including those that relate to postjudgment conduct, parole plans, and rehabilitation. (Cal. Code Regs., tit. 15, § 2402; *In re Criscione* (2009) 173 Cal.App.4th 60, 72–73, 76–77 [92 Cal.Rptr.3d 258].) Thus, permitting the prosecution or court to negotiate the conditions and/or length of parole would usurp the board's statutory authority and negate any consideration of factors relating to a defendant's postjudgment conduct. In essence, it would ascribe a prescient ability to the court and/or prosecutor to foresee a defendant's suitability for a specific term of parole years or even decades in the future. We cannot believe that either the Legislature or the California Supreme Court intended to condone such a result. As *Renfro* made clear, courts and prosecutors have limited "discretion in determining the subject matter of a plea bargain. . . . ▮ A plea bargain is limited to 'powers legally available to' the court [citation] . . . ." (*Renfro, supra*, 125 Cal.App.4th at p. 230, fn. omitted.) The specific prospective duration of a parole term, even one within the statutory timeframe, is simply not within the discretion or powers legally available to the prosecutor or the trial court. Indeed, in *Moser* the prosecution expressly recognized the necessity of receiving the board's assent to its proposed remedy. (*Moser, supra*, 6 Cal.4th at p. 349.)

Finally, we note that the statements in *Moser*, *McMillion* and *Avila* condemning negotiation of the term of parole in plea bargains were not limited to the facts of their respective cases: "the length of a parole term is *not* a permissible subject of plea negotiations" (*Moser, supra*, 6 Cal.4th at p. 357); "the [trial] court is authorized neither to determine whether a parole period shall be served nor to prescribe its duration; that is the province of [the board]" (*McMillion, supra*, 2 Cal.App.4th at p. 1369); the "[parole term] could not have been the subject of negotiations or a condition of the final [plea] agreement" (*Avila, supra*, 24 Cal.App.4th at p. 1461). Thus, regardless of whether a negotiated parole term is within the statutory timeframe, "[n]either the prosecution nor the sentencing court has the authority . . ." to prospectively dictate to the board the term of parole it must impose upon a defendant's release from prison. (*Moser*, at p. 357.)

### C. *Misadvisement*

Although petitioner nowhere argued below or on appeal that the recitation of the three-year parole term upon his release constituted a misadvisement, he did aver that he "counted on this term when [he] agreed to plead guilty." Moreover, the Department raises the issue that petitioner's contention is more "akin to a claim of judicial misadvisement" than a failure of the Department to adhere to the conditions of his plea agreement. Thus, we shall address whether the trial court committed prejudicial error in failing to advise petitioner that he faced a possible five-year term of parole upon release.

■ Failure to properly advise a defendant of the parole consequences of his guilty plea is error. (*Moser, supra,* 6 Cal.4th at p. 352; *McMillion, supra,* 2 Cal.App.4th at p. 1368.) "However, a defendant . . . is entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement. [Citation.]" (*Moser,* at p. 352.) The remedy of specific performance is unavailable in a case of misadvisement. (*McMillion,* at p. 1369.) Thus, should petitioner establish any prejudicial misadvisement, the only remedy afforded him would be to withdraw his plea. (See *Walker, supra,* 54 Cal.3d at pp. 1023–1024; *McMillion,* at p. 1368; *Avila, supra,* 24 Cal.App.4th at pp. 1459–1460.)

Here, it is manifest that the guilty plea form contained a misadvisement that petitioner would face a determinate parole term of three years upon release from prison. Section 3000, subdivision (b)(1), as effective on the date of petitioner's plea, provided that a defendant convicted of the offenses for which petitioner pled guilty, "shall be released on parole for a period not exceeding five years . . . ." However, the trial court's oral advisement did not specify a determinate three-year term of a parole; rather, the court merely prescribed that petitioner would "probably" receive a three-year term of parole. Only the board has the discretion to dictate the duration of a defendant's parole period within the statutory framework established by the Legislature. (*McMillion, supra,* 2 Cal.App.4th at p. 1369.) Thus, a three-year parole term was within the realm of possibility. Nevertheless, we presume that the trial court's failure to inform petitioner that he could conceivably face a five-year term of parole was error. However, we hold that petitioner has failed to establish prejudice.

Petitioner "did not specifically allege that he was prejudiced by the trial court's misadvisement." (*Avila, supra,* 24 Cal.App.4th at p. 1460.) Although he declared that the terms of his parole restricted him from living with his family and having any contact with his children; and forced him to maintain a separate residence, which placed an enormous burden on him and his family; and that he counted on a three-year term of parole when he agreed to plead guilty, he never averred that he would not have entered the plea had he known that he could face a five-year parole term upon release from prison. Indeed, by entering into the plea agreement, petitioner reduced his exposure from 10 years of imprisonment to three. Moreover, it is not at all clear that petitioner has any interest in withdrawing his plea. Therefore, we conclude that petitioner has failed to allege sufficient prejudice from the misadvisement to warrant any remedy.

## DISPOSITION

The judgment is reversed and the superior court is directed to enter an order denying the petition.

Richli, Acting P. J., and King, J., concurred.