Filed 3/3/16  P. v. Harmon CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B259263 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA071371) |
| v. | |
| GERJUAN HARMON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Susan M. Speer, Judge.  Affirmed with modifications.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David A. Voet , Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Gerjuan Harmon (defendant) appeals his convictions for several crimes including first-degree burglary, felony grand theft of personal property, evading an officer and resisting an executive officer, as well as the ensuing 17-year prison sentence. Specifically, he argues that the trial court erred in revoking his right to represent himself near the end of his partial retrial; in not instructing the jury only to consider certain items of property for the grand theft count; in treating his prior conviction for first-degree burglary as a "strike" under our "Three Strikes" law; and in staying rather than striking the five enhancements for prior prison terms. Because we conclude that only the final claim has merit, we affirm his convictions and modify his sentence to strike the enhancements for prior prison terms.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Underlying Criminal Conduct

In July 2012, defendant entered the house of fitness guru Jillian Michaels (Michaels) without her permission. He took several items from inside the house, including her wallet, a $10,000 Hermes bag, and an Audemars Piguet watch. He also took the "keys" to her Bentley and drove it away; the Bentley contained Michaels' purse and several laptops. Michaels and her family were at home, but unaware of defendant's entry and theft.

The next day, an officer spotted Michaels' Bentley parked outside a deli. After defendant got into the Bentley, he led the officer in a high-speed chase that ended when he collided with another vehicle and a light pole. Defendant then led the officer on a foot chase that ended when another officer found defendant hiding in a shed. Defendant struggled with the officers, and was subdued only after being tased twice. Police recovered Michaels' bag and wallet from the totaled Bentley.

### II.    Procedural History

The People charged defendant with (1) first-degree burglary with a person present (Pen. Code, § 459)[1], (2) grand theft of personal property, specifically the "Audemar's

---

[1]      Unless otherwise indicated, all further statutory references at to the Penal Code.

2

Watch, Hermes Handbag and Wallet" (Pen. Code, § 487, subd. (a)), (3) grand theft auto (§ 487, subd. (d)(1)), (4) unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), (5) evading an officer in vehicle with willful disregard (Veh. Code, § 2800.2, subd. (a)), (6) and (7) resisting executive officers (Pen. Code, § 69), (8) hit-and-run driving, as a misdemeanor (Veh. Code, § 20002, subd. (a)), and (9) and (10) receiving stolen property—for the purse and credit card, and for the laptops, respectively (Pen. Code, § 496, subd. (a)). The People alleged defendant's 2010 first-degree burglary conviction as a strike under our Three Strikes law (Pen. Code, §§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)), as a prior serious felony (Pen. Code, § 667, subd. (a)(1)), and as a prior prison term (Pen. Code, § 667.5, subd. (b)). The People also alleged four more prior prison terms (Pen. Code, § 667.5, subd. (b)).

The matter proceeded to trial in December 2013. The trial court dismissed the receiving stolen property count as to the purse and credit card (count 9) for insufficient evidence. The jury convicted defendant of unlawful driving or taking of a vehicle (count 4), evading an officer (count 5), resisting two executive officers (counts 6 and 7), and misdemeanor hit-and-run driving (count 8). The jury acquitted defendant of grand theft auto. The jury hung on the remaining three counts—first-degree burglary (count 1), grand theft of the personal property (count 2), and receiving the stolen laptops (count 10).

The People proceeded to a second trial in June 2014 on the three counts on which the first jury hung. The trial court dismissed the receiving stolen property count as to the laptops (count 10) for insufficient evidence. The jury convicted defendant of first-degree burglary (count 1) and grand theft of personal property (count 2), and found all of the sentencing enhancement allegations to be true.

The trial court sentenced defendant to 17 years in state prison. The court treated the first-degree burglary count as the principal offense, selected the mid-term of four years, and doubled it to eight years because of the prior strike. The court imposed three consecutive terms of 16 months (one third the middle term, doubled because of the prior strike)—one for the unlawful taking of a vehicle, one for evading an officer, and one for the first resisting an executive officer count. The court then added a consecutive five

3

year term because the 2010 first-degree burglary was a serious felony.  The court imposed a concurrent prison term of four years on the second resisting an executive officer count and six months on the hit-and-run misdemeanor.  The court stayed both the four-year sentence for grand theft of property and all five prior prison term sentences.

Defendant timely appeals.

## DISCUSSION

### I.      Challenges to Conviction(s)

#### A.      *Erroneous revocation of defendant's right to represent himself*

Defendant represented himself during the entirety of the first trial and through most of the second trial.  He argues that the trial court erred in revoking his right to represent himself.

During the second trial, defendant accused the court of being "biased" and of "lying . . . in [his] face"; defendant raised his voice and used profanity; and he engaged in name calling and addressed witnesses, including Michaels, by their first names. Defendant refused to accept the court's evidentiary rulings, and on multiple occasions ignored those rulings by referring to evidence the court had ruled inadmissible and by telling the jury the court was preventing him from presenting relevant evidence.  When the court excluded certain evidence, the defendant threatened that he would "speak on it" "under [his] First Amendment right."  The court warned defendant no fewer than seven times that it would terminate his right to self-representation if he persisted in this behavior.  When defendant still continued to "put[] improper excluded information before the jurors," the court finally revoked his right to represent himself and ordered his stand-by counsel to take over.  The court explained that defendant "ha[d] continually and substantially failed to comport his behavior in conformity with the rules, regulations and order of this court despite repeated warnings throughout the trial and pre-trial," and found that defendant was "doing this intentionally to get inadmissible evidence before the jury and create inferences of misconduct by the court and prosecutor to elicit jury sympathy and cause confusion," and alternatively that defendant could not "conform his behavior to the rules and ha[d] disrupted the dignity and the core and integrity of these proceedings."

4

A criminal defendant has a federal constitutional right to represent himself at trial. (*Faretta v. California* (1975) 422 U.S. 806, 821 (*Faretta*).) This right "is not a license to abuse the dignity of the courtroom [or] . . . [a] license not to comply with relevant rules of procedural and substantive law." (*Id.* at p. 834, fn. 46.) A defendant's right to self-representation accordingly exists only as long as he or she "is able and willing to abide by rules of procedure and courtroom protocol" (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173), and may be terminated if the defendant engages in "misconduct [that] seriously threaten[s] the core integrity of the trial." (*People v. Carson* (2005) 35 Cal.4th 1, 6 (*Carson*); *Faretta*, at p. 834, fn. 46 [noting trial court's power to terminate self-representation when the defendant "deliberate[ly] engages in serious and obstructionist misconduct"].) To justify termination of self-representation, the defendant's misconduct "need not result in a disruption of the trial"; what matters is "[t]he likely, not the actual, effect of the misconduct." (*Carson*, at p. 10.) In assessing whether to terminate self-representation, a trial court should consider (1) the nature of the misconduct, (2) its likely impact on the proceedings, (3) "the availability and suitability of alternative sanctions," (4) whether the defendant has been warned that his continued misconduct will result in termination of self-representation, and (5) "whether the defendant has 'intentionally sought to disrupt and delay the trial.' [Citation.]" (*Carson*, at p. 10.) We review a trial court's decision to terminate self-representation for an abuse of discretion; we may not disturb that ruling "in the absence of a strong showing of clear abuse." (*People v. Williams* (2013) 58 Cal.4th 197, 253, quoting *People v. Welch* (1999) 20 Cal.4th 701, 735.)

The trial court did not abuse its discretion in terminating defendant's self-representation. Defendant made repeated personal attacks on the court, refused to conduct himself according to the rules of courtroom protocol when he raised his voice and used profanity, and time and again chose to flaunt the court's evidentiary rulings by alluding to excluded evidence in front of the jury. (E.g., *People v. Peyton* (2014) 229 Cal.App.4th 1063, 1081 [termination appropriate based on "repetitious personal attacks on the integrity of the trial court"]; *Carson*, *supra*, 35 Cal.4th at pp. 10-21 [termination

5

appropriate based on defendant's refusal to stand in the appropriate area of the courtroom].) The court many times reminded defendant of its rules and rulings and at least seven times warned defendant that the consequence for any further violation was the termination of self-representation; defendant's election to persist in his tactics and antics notwithstanding these reminders and warnings provided ample basis for the court to conclude that defendant's misconduct was intentional, that lesser sanctions would be ineffectual, and that the "core integrity" of the trial proceedings was being compromised.

Defendant raises three arguments. First, he concedes that he was "somewhat obstreperous and may have acted inappropriately at times," but asserts that his misconduct "did not rise to the high level of serious and obstructionist conduct which threatened the core integrity of the entire trial." As explained above, we disagree with both his characterization of his misconduct and his assessment of its impact on the trial. Second, he argues that misconduct was motivated by "frustration and dashed hopes," not any "malicious intent to disrupt the proceedings." This is beside the point. Because a defendant's misconduct can justify the termination of self-representation even if unintentional (*Carson*, *supra*, 35 Cal.4th at p. 11), there is certainly no requirement that a defendant have a specific motive for his misconduct. Lastly, defendant argues that the prosecutor twice urged the court to terminate his self-representation status. Although the "termination of the defendant's *Faretta* rights . . . should not be the subject of a 'motion' by the People" because it is the trial court's responsibility to determine the appropriate sanction (*id.* at p. 11, fn. 1), the prosecutor's first request came after the court had already warned defendant five times that he might lose his self-representation status; what is more, the court did not terminate self-representation after that first request and its ultimate decision is amply supported by the record and by the court's findings.

### B. *Instructional error*

Defendant contends that that trial court was obligated, due to the first jury's acquittal for grand theft auto, to instruct the jury in the second trial not to consider his theft of the Bentley when assessing the grand theft count; relatedly, defendant argues that

6

his standby counsel was constitutionally ineffective for not requesting such an instruction.

The information charging defendant with grand theft of personal property alleged that he had taken "money and personal property" worth more than $950, and specifically listed that property: "to wit, Audemars Watch, Hermes Handback & Wallet." The trial court read this charge to the jury at the beginning of the second trial. The jury instructions on this count referenced "property owned by someone else." The verdict form for this count referred to "Theft of Personal Property, to wit: Audemars Watch, Hermes Handbag and Wallet . . . as charged in Count 2 of the information."

Double jeopardy precludes a defendant from being retried for a crime of which he was acquitted (*Ashe v. Swenson* (1970) 397 U.S. 436, 445-447), and a jury "must agree unanimously [that] the defendant is guilty of a specific crime" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132, italics omitted). From these principles, defendant argues that the trial court had an independent duty to ensure that the jury's grand theft verdict did not rest upon the theft of the Bentley, of which he was acquitted, and that the court was obligated to discharge that duty by instructing the jury only to consider the theft of evidence *other than the Bentley*. We review a claim of instructional error de novo. (*People v. Vega* (2015) 236 Cal.App.4th 484, 495.)

We need not decide, as the People urge, whether this was a "limiting instruction" that is forfeited if not requested (*People v. Maury* (2003) 30 Cal.4th 342, 394 & 397, fn. 11) because we conclude that either there was no error or that any error was harmless beyond a reasonable doubt. (Accord, *People v. Diaz* (2015) 60 Cal.4th 1176, 1195 [instructional error subject to harmless error analysis].) That is because the trial court described to the jury, at the beginning of the trial, that the grand theft charged in this case was limited to certain evidence. In light of "[t]he principle that jury instructions are read as a whole" (*People v. Hajek & Vo* (2014) 58 Cal.4th 1144, 1224), the court's failure to repeat that limitation during the predeliberation charge was ostensibly not error at all. Even if we assumed the court was required to give a predeliberation instruction as to which property could and could not be considered for the grand theft charge, the court's

omission was surely harmless in this case given the court's pretrial description of that charge and the verdict form that expressly set forth the property that could be considered.

Defendant makes two further arguments. He argues that we may not consider the trial court's initial instruction because the court also informed the jury that "charges are not in any sense evidence." But the court did not tell the jury to disregard *the charges* or the court's instructions regarding them, and that is what matters. Defendant further contends that the prosecutor muddied the waters by referring to the theft of the Bentley during opening and closing argument. Although the prosecutor mentioned the auto theft, at no point did he urge the jury to convict the defendant of grand theft because of *that* theft. What is more, defendant's standby counsel argued during closing, "Remember: He's not being charged with grand theft auto or even theft of the auto, but the items that were in there." Because it is not error to mention past, acquitted conduct (*People v. Bradford* (1997) 15 Cal.4th 1229, 1375), and because the prosecutor said nothing inconsistent with the court's instructions and verdict form limiting which property could underlie a conviction for grand theft, we find the omission of any further instruction to be harmless beyond a reasonable doubt.

Because the instructions were either correct or because any error in them was harmless, defendant also cannot show that the decision of his standby counsel not to request such an instruction amounted to deficient performance or otherwise prejudiced him, both of which are required to state a claim for ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [defendant must show he was prejudiced by counsel's deficient performance].)

## II.     Challenges to Sentence

### A.      *Use of 2010 first-degree burglary conviction as a strike*

Defendant asserts that the trial court erred in treating his 2010 first-degree burglary conviction as a strike because that conviction arises from a plea agreement in which the prosecutor agreed it would *not* constitute a strike.

In May 2010, defendant was charged with four crimes, including "first degree burglary, person present." The information stated that the first-degree burglary count was

a "serious" felony and, if a person was present, a "violent" felony. In June 2010, defendant executed a draft "Felony Advisement of Rights, Waiver, and Plea Form," in which he agreed to plead to the first-degree burglary count in exchange for a two year prison sentence to be served concurrently with the sentence on his parole violation and for the dismissal of the remaining three counts. Defendant put his initials beside an advisement that read: "I understand that if I am pleading to a serious or violent felony (a strike offense), and I am convicted of another felony in the future, then pursuant to the Three Strikes laws, the penalty for that future felony will be increased as a result of my conviction in this case." In September 2010, defendant executed a second "Felony Advisement of Rights, Waiver, and Plea Form," in which he agreed to enter a plea to the first-degree burglary in exchange for a two year prison term to be served concurrently with the sentence on his parole violation as well as for the dismissal of the remaining counts and of any allegations regarding prior convictions. On this form, defendant did *not* initial next to the strike advisement; the box where his initials would go had an "X" through it. Defendant entered his plea on September 3, 2010. No transcript of the plea colloquy is available, but the minute order reflects that defendant was advised of "the possible consequences of a plea of guilty or nolo contendere, including . . . the possible legal effects and maximum penalties incident to subsequent convictions for the same or similar offenses."

After the first jury trial and before the second, defendant filed a motion seeking specific performance of his 2010 plea agreement. In that motion, he argued that the "X" through the advisement on the second, final Felony Advisement form constituted a promise not to use the conviction as a "strike" and that the prosecutor was violating that agreement by alleging it as a "strike" in this case. Defendant "explicitly clarif[ied] that he [was] not now challenging the constitutionality validity of the [2010 conviction]" and was "*only* seeking to enforce specific performance of terms negotiated at the time of the prior conviction." The trial court denied the motion, finding that defendant "pled . . . to first-degree residential burglary" and that "[t]here is no indication anywhere in the file or

9

notes or plea that the People have reduced the burglary to second degree," such that the conviction would cease to be a "serious" felony.[2]

Because "plea bargaining is a widely used practice that is essential to the efficient and fair operation of the criminal justice system," courts will generally enforce the terms of such bargains using contract principles. (*People v. Renfro* (2004) 125 Cal.App.4th 223, 230 (*Renfro*).) Enforcement of a plea agreement turns on (1) the terms of the agreement, and (2) the remedy sought. "[I]n order to be deemed a term of a plea agreement," however, "the circumstances must show that the ""'plea rest[ed] in [a] significant degree on a promise or agreement . . . so that it can be said to be part of the inducement or consideration . . . .' [Citation.]""" (*Berman v. Cate* (2010) 187 Cal.App.4th 885, 893 (*Berman*).) A trial court's "omission, at the change of plea hearing, of advice regarding" the consequences of a plea does "not transform the court's error into a term of the parties' plea agreement" (*People v. McClellan* (1993) 6 Cal.4th 367, 379, italics omitted); nor does a court's misadvisement regarding those consequences (*In re Moser* (1993) 6 Cal.4th 342, 356). Along similar lines, a prosecutor's lack of "legal authority" to agree to a term counsels against a finding that she did. (*People v. Paredes* (2008) 160 Cal.App.4th 496, 511-512 (*Paredes*).) There are two remedies for a breach of a plea agreement's term: (1) allowing the defendant to withdraw the plea; and, in certain circumstances, (2) specific enforcement of that term. (*Renfro*, at p. 233.) We review the terms of a plea agreement de novo (*Paredes*, at p. 507), and the trial court's decision whether to specifically enforce them for an abuse of discretion (*United States v. Anthony* (9th Cir. 1996) 93 F.3d 614, 616).

We conclude the trial court correctly denied defendant's motion for specific performance for two reasons. First, defendant's plea did not rest on a promise to ignore the consequences of this first-degree burglary conviction under the Three Strikes Law. His conviction of first-degree burglary is, by statutory definition, a "serious" felony.

---

[2] The trial court concluded that the 2010 conviction did not constitute a "violent" felony because defendant did not admit that a person was present. (§ 667.5, subd. (c)(21) [so requiring].)

10

(§ 1192.7, subd. (c)(1)(18) [defining "serious" felony to include "*any* burglary of the first degree"], italics added.)  Because a prosecutor cannot agree to ignore a statute, this counsels against a finding that the prosecutor did so.  (*Parades*, *supra*, 160 Cal.App.4th at pp. 511-512.)  More importantly, the minute order reflects that defendant *was* advised how the conviction might be used to enhance future criminal sentences; this is inconsistent with a term to the contrary.  What is more, the "Felony Advisement" form, including its "Other Terms" section that spells out which counts are being dismissed and whether the sentence is to be served concurrently or consecutively, nowhere states that the conviction will not be treated as a strike in the future.  Defendant asks us to infer such a term solely from the fact that there is an "X" in the box next to the "strike" advisement rather than his initials.  This is not enough to show that his plea rested "in a significant degree" on that term.  (*Berman*, *supra*, 187 Cal.App.4th at p. 897.)

Second, even if we agreed with defendant that this lone inference was sufficient to define a term of the plea agreement, he would still not be entitled to specific performance of that term.  That is because "specific performance is not an available remedy when the negotiated sentence is invalid or unauthorized."  (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1224; accord, *Moser*, *supra*, 6 Cal.4th at p. 357 [declining to specifically enforce agreement altering parole term]; *Berman*, *supra*, 187 Cal.App.4th at pp. 893-895 [same]; *People v. Avila* (1994) 24 Cal.App.4th 1455, 1461; *McClellan*, *supra*, 6 Cal.4th at p. 380 [declining to specifically enforce agreement relieving defendant of statutory duty to register as a sex offender]; *Parades*, *supra*, 160 Cal.App.4th at pp. 511-512 [declining to specifically enforce agreement relieving defendant of statutory immigration consequence of conviction]; cf. *Davis v. Woodford* (9th Cir. 2006) 446 F.3d 957, 962 [enforcing agreement to treat two separate charging documents as a single document for purposes of determining number of prior convictions].)  Because a prosecutor has no authority to disregard the statutory classification of first-degree burglary as a "serious" felony (see *People v Leslie* (1996) 47 Cal.App.4th 198, 205 [defendant's admission of "serious" felony status unnecessary]), specific performance is not available in this case.  Defendant on appeal seeks the

11

alternative remedy of withdrawal of his 2010 plea, but explicitly disavowed that remedy below and "[a] party is not permitted to change his position and adopt a new and different theory on appeal" (*Cable Connection, Inc. v. DirecTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12).

### B.    *Prior prison term enhancements*

Defendant lastly asserts that the trial court erred in staying, rather than striking, the five prior prison term enhancements that it elected not to impose.  This is correct. (*People v. Jones* (1992) 8 Cal.App.4th 756, 758.)  The prior prison term for the first-degree burglary conviction must be stricken for an additional reason—namely, it also underlies the five-year "serious" felony enhancement.  (*People v. Jones* (1993) 5 Cal.4th 1142, 1153.)

### DISPOSITION

We affirm the judgment with instructions to modify the sentence to strike the five prior prison term sentences.  The superior court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                                                     HOFFSTADT


We concur:

_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ


12